To case number four, Duarte v. Holder. Mr. Gutierrez. May it please the court, Judge. Sorry, I was in the bathroom earlier. Counsel. This case comes before the court. Mr. Gutierrez, where were you when this case was called? I was in the bathroom, Judge. We were on number two, and I figured I had two cases ahead of me. We expect lawyers to plan their activities to be here when their cases are called. Yes, Your Honor. I apologize. May I continue? Please proceed. Thank you. Judge, this case alleges three errors by the immigration judge and a couple by the Board of Immigration Appeals. The first error is that the immigration judge failed to consider this case as an asylum petition, directing its attention as a merely withholding of removal case, disregarding the one-year rule exception under the changing circumstances. The second allegation is that the immigration judge failed to consider material factors pursuant to both the Lam v. Holder holding and the Huang v. McCaskey holding of the Seventh Circuit that states that where the court fails to consider a material factor, it's an abuse of discretion. And if I could address that briefly before I continue with my summary, the material factor that we're claiming that was failed to consider, that was not considered, is the portion of the Olivia Navarrez affidavit where she states that the death threats continued on through December of 2011. The court focused its findings on the kidnapping back in 1998. It gave credence to that portion of the affidavit and to the testimony that Mr. Duarte was in fact kidnapped in 1998 and he escaped from the Zeta cartel kidnapping for extortion purposes, but did not mention anything about the continued death threats, which ties into the changing circumstances which were continuing to occur, the threats made upon Mr. Duarte as late as December of 2011. And then finally, the alleged error is that simply both the immigration judge and the Board of Immigration Appeals failed to completely or rather remain entirely silent on Mr. Duarte's Convention Against Torture petition and deferral of removal. How was that issue presented to the board? The issue was presented to the board essentially sub silencio, Judge. In other words, it wasn't? It was not. Well, it's pretty well established that the board doesn't have to address arguments not made. Well, that's true, Judge. That's true. So we'll reserve that one. And I'll focus then on the issue of the immigration judge failed to consider what I think is the strongest argument, and that is that it failed to consider the portion of Ms. Olivia Nava Reyes' affidavit saying that the death threats were continuous all the way through December of 2011. If the immigration judge was going to give full weight and credit to the testimony in the affidavit and the testimony of Mr. Duarte, then certainly there should have been some mention about his fear of returning to Mexico based upon the continuing threats as late as December of 2011. Now, I do... What was going on between 2000 and 2011, as far as he's concerned? Between 1998 and 2011? Well, I don't... Whenever he came to the United States. Yes. Well, he was living in the United States. He was working here and... Was there some concern? Was he getting... Who was getting these threats? His mother? Well, I think it's his girlfriend or a friend of his who was involved in the business of selling cars back in Mexico. Still in Mexico? Yes, he was in Mexico. And that business was going on? The business was going on. He had a car dealership business. I don't know. I'm not... I'm not aware if Ms. Olivia Nava was still running the business there, but she certainly was a friend of his and was still receiving death threats as late as December of 2011. Well, I'm mostly interested in what he's doing all the time over here, where he's under this sort of veiled fear without expressing that to someone until he gets caught doing something. Well, he got caught, Judge, because he was wrongfully accused of drug trafficking, and that's another part of this. That's unfortunate, but he didn't... Right. He didn't, I guess, contact somebody, maybe you or somebody like you, to say we've got this problem and initiate it as opposed to waiting until somebody catches up with him. That's true, Judge. But, you know, when the immigration judge said that part of the problem was that he was involved in this drug trade back in his country, I think where he was confused was that the drug cartel had held him up for extortion and maybe that there was a silent assumption that he was involved in the drug trade because of the fact that he was arrested here for trafficking in heroin. Now, maybe the two components triggered something in the immigration judge's mind that he made a leap in conclusion. I don't know. But he did mention on the record that because of your... I forgot what it said, but it says he was involved in drug trafficking in his country, and he stated that at page 3 in his order, which, as you know, that was not true. So, you know, it's hard to tell exactly what was in the immigration judge's mind when he said that maybe he was drawing an impermissible inference by the fact that he was, in fact, tried, some trier of law and fact had determined that there was probable cause to believe that, you know, he was involved in the drug trade, at least here in the United States, but that that was found out to be false, and he was acquitted of that. So the fact is that, you know, this is the kind of case where this man had essentially fled his country. He fled from... And I point to, you know, I point to... You'd think someone who was... This is to continue on Judge Mannion's question. You'd think someone who was fleeing persecution in his home nation, as soon as he gets into the United States, would report to immigration officials and demand asylum, but instead your client went underground and hid like a thief rather than standing up and saying, I'm here to escape persecution. Well, Judge, you know, that's a very strong accusation to make of somebody who was fleeing from Mexico. He hid. There is no doubt whatever. Judge, you flee from Mexico. He did not report. You flee from Mexico. People don't... ICE is not in the business of just granting asylum to people fleeing from Mexico. Maybe if he had fled from Honduras... No, but a claim for asylum prevents removal until it's resolved. It does. But people from Mexico... This is one reason why the one-year bar on asylum claims was established. It's very difficult to believe people who show up, who come to the United States and then go underground, rather than forthrightly claiming asylum promptly. There's also laws which create exceptions to the one-year bar, Judge, and you can't have a law that doesn't focus on the entirety of the law. Legislators often make up laws and then make exceptions to those laws because there are very real components to those exceptions, and this one exception is a change in circumstance. You ask what the change in circumstance is? We don't even have jurisdiction over that. You don't have jurisdiction in changing circumstances and reviewing... Not in asylum cases. This is something that the agency's brief pointed out. You ignored the jurisdictional issue in your opening brief. The agency's brief makes an argument that we have no jurisdiction over it, and you don't file a reply brief. What's a court to think? Judge, the court has jurisdiction where the court below ignores material evidence, and material doesn't have to be overwhelming. If you wish to make an argument for jurisdiction in the face of a contention that there is none, you have to file a brief. Ignoring the argument doesn't get the job done. Thank you, sir. Ms. Platt. Good morning, and may it please the court, Meadow Platt on behalf of the United States Attorney General. The petitioner in this case received a full and fair hearing before the agency. Following entry of an in absentia order of removal, the immigration judge reopened proceedings and gave the petitioner the opportunity to pursue his asylum claim. The judge considered the evidence in the case and issued a decision addressing the petitioner's eligibility for asylum and withholding of removal, which were the only claims that the petitioner advanced to the immigration judge. The petitioner appealed the immigration judge's decision to the board, and the board addressed each of the arguments that were properly raised. While the board did not address the petitioner's newly defined particular social group, its decision in that regard was consistent with agency precedent that require an alien to first raise arguments to an immigration judge. At no point did the agency deviate from established procedures or legal authority, and the record does not compel that the petitioner established eligibility for relief from removal. The only issue that is properly before the court is whether the agency reasonably found that the petitioner's fear of the Zetas did not correspond to a protected ground for purposes of withholding of removal. Under the REAL ID Act, which applies to this case, an applicant for withholding of removal must establish that one central reason for his feared harm is a protected ground. That is his race, religion, political opinion, nationality, or membership in a particular social group. As this court has found in numerous decisions, danger that flows from a violent struggle that affects the general population in an undifferentiated way is not related to a protected ground. Likewise, where criminals are motivated by financial gain, the harm was not on account of a protected ground. And finally, retribution from a personal dispute is not on account of a protected ground. What was the social group that he claimed? Something about a group of businessmen who were intimidated or something like that? Your Honor, he never raised a particular social group to the immigration judge. That is why the Board of Immigration Appeals declined to address the new particular social group that he raised for the first time to the Board. Which was what? Your Honor, I have it written down. No, that's all right. It was something regarding businessmen who had faced extortion. I can't recall the exact wording. But the important point is that he had never raised it to the immigration judge. Your Honor, the petitioner candidly admitted on direct examination that he was targeted for extortion in his own words. His forthcoming testimony points to general crime and the Zetas' desire for money as the reason they target him, not because of any protected characteristic that he bears. Do the Zetas operate nationwide or just in a portion of Mexico? Your Honor, I am not entirely confident, but I believe from the Department of State report and the record that they operate in large portions of Mexico, but they're more active in certain areas. But I can't say with confidence. Do we know if they were operating in the area that the petitioner lived in, in the Pacific Coast? He was found to be credible, and he testified that they were operational in that area. So taking his testimony as credible, then yes. But there wasn't anything else other than that, other than his testimony, that they were operating there? I don't believe so, Your Honor. Petitioner's alternative argument to the immigration judge is that the Zetas would attack him as revenge because he escaped from their kidnapping attempt without paying a ransom. However, that points to revenge and personal retribution, not any protected ground for the harm that he might fear. As has been discussed by the court, the petitioner's remaining arguments are not properly before the court. With respect to asylum, an alien must file for asylum within one year of arrival or establish changed circumstances or extraordinary circumstances. Under the Immigration and Nationality Act, and as this court has found recently in Tian or reaffirmed, courts may not review a determination regarding the timeliness of an alien's application for asylum or the existence of changed or extraordinary circumstances to excuse his late filing, unless for constitutional claims or questions of law. Counsel for Petitioner argues that the immigration judge wholly refused to consider the evidence in the case, and I believe that that argument, if I'm understanding him correctly, I believe that he's arguing that that's a constitutional claim. However, in this case, that argument simply doesn't, it doesn't hold water because what he's saying is that the immigration judge failed to consider a letter which at best stated the petitioner had an ongoing fear. The standard is not whether the petitioner had an ongoing fear, but as Petitioner's counsel correctly pointed out, whether there was a changed circumstance. An ongoing fear is, of course, not a change. In any case, as Judge Easterbrook pointed out, the court lacks jurisdiction. Finally, as Petitioner's counsel admitted, cat protection is not, or protection under the Convention Against Torture, that issue is not properly before this court because it was never raised to the Board of Immigration Appeals below. If the court has no further questions, respondent respectfully asks the court to dismiss in part and deny in part this petition for appeal. Thank you. Thank you very much, counsel. The case is taken under advisory.